**DELTA TRUCK & TRACTOR, INC.,**
Plaintiff–Appellant,

v.

**J.I. CASE COMPANY, et al.,**
Defendants–Appellees.

No. 87–4449.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1988.

Jack N. Price, Austin, Tex., James Middleton, Henry B. Bruser, III, Gold, Simon, Weems, Bruser, Sharp, Suls & Rundell, Alexandria, La., for plaintiff-appellant.

Michael Fischer, Foley & Lardner, Milwaukee, Wis., Miles P. Clements, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge,
REAVLEY, Circuit Judge, and
HUNTER,* District Judge.

CLARK, Chief Judge:

Delta Truck & Tractor, Inc. (Delta) appeals the district court's dismissal of its civil RICO action.[1] We affirm.

## I.

Review of a dismissal on the pleadings requires that we accept as true the non-moving party's well-pleaded allegations. Delta, a company involved in the sale and repair of farm equipment, operated under a franchise agreement with International Harvester Company (IH), a manufacturer of farm machinery. The dispute in this case arises out of the acquisition of IH by J.I. Case Company (Case), itself a manufacturer of agricultural equipment, and its parent company, Tenneco, Inc. (Tenneco). As part of the merger, Case, Tenneco and IH sought to create one cohesive dealership network by eliminating duplicative Case and IH dealers. The gravamen of Delta's RICO claim alleges that these three corporate defendants consolidated the dealerships through numerous acts of wire and mail fraud designed to appropriate the business assets of Delta and over 400 other terminated Case and IH dealers. After twice allowing Delta to amend its complaint, the district court granted the defendant's motion to dismiss.

## II.

Congress wrote RICO in broad, sweeping terms to combat the many, varied, anfractuous ways in which racketeers operate. Reduced to its three essentials, a civil RICO claim must involve: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*. The Act's sanctions, however, were not intended to extend to fraudulent commercial transactions affecting interstate commerce. In the following ways, the principle of continuity limits the types of persons, patterns and enterprises that civil RICO actions may reach.

### A.

The object of all civil and criminal RICO actions is the RICO "person," the defendant. RICO defines person broadly to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). If we are to restrict RICO to the type of conduct Congress intended to proscribe, the RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering. In most cases, pleading the existence of a "pattern of racketeering activity" will supply this element of continuity to the RICO person. The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts. Two isolated acts of racketeering have been held sufficient to constitute a pattern under this Circuit's unique precedent.[2] But two such acts alone may fail to satisfy the continuous threat requirement. *Cf. Mastercraft In-*

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The Racketeering, Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961–1968, creates a civil cause of action under section 1964(c) against those injured by violations of section 1962(a)-(d). The portions of section 1962 relevant to this case can be abstracted as follows. Section 1962(a) makes it "unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise." Section 1962(b) makes it illegal "for any person through a pattern of racketeering activity ... to acquire or maintain ... any interest in or control of any enterprise." Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity."

2. *See infra* Part IIB of this opinion.

*dus., Inc. v. Breining,* 664 F.Supp. 859, 861 (S.D.N.Y.1987) ("plaintiff has alleged no continuing enterprise other than the defendants' lawful business, of which the particular fraud alleged is at best a minor part"); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 655 F.Supp. 1179, 1184 (S.D.N.Y.1987) ("[T]he RICO defendants in this case were engaged in a single lawful project of finite scope and duration —constructing a television studio for a customer. Allegations of numerous instances of fraud in carrying out this project does not bring it within the scope of the RICO statute.").

### B.

■ A pattern of racketeering activity "requires at least two acts of racketeering." 18 U.S.C. § 1961(5). Predicate acts of racketeering are defined to include wire and mail fraud. *Id.* at § 1961(1)(B). In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court noted that "while two acts [of racketeering] are necessary, they may not be sufficient." The critical features of a pattern of racketeering activity are continuity and relationship. *Id.* This continuity and relationship cannot exist in the pattern of racketeering activity alone. Continuity and relationship are reciprocal values that must function with at least one of the other essential elements of a RICO claim.

■ One ground given by the district court for dismissing Delta's complaint was the failure to plead a pattern of racketeering activity. In any circuit other than ours, it may have been proper to dismiss Delta's complaint on the ground that the numerous alleged acts of mail and wire fraud were parts of a single, otherwise lawful corporate merger not constituting a pattern of racketeering. But in *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985), a panel of this court held that two acts of mail fraud that related to a single business transaction constituted a

pattern of racketeering activity. The district court declined to follow *R.A.G.S.* because of its lack of analysis and because of the statement in *Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 481 (5th Cir.1986), that the " 'pattern of racketeering activity' language" in the RICO statute is something that must be interpreted in "the future." Several panels of this court have been critical of *R.A. G.S.,*[3] but each has been bound, as we are, by the rule of *R.A.G.S.* A request to reconsider *R.A.G.S.* "can only be made to the entire court sitting en banc, not to another panel." *Smith v. Cooper/T. Smith Corp.,* 846 F.2d 325, 329 (5th Cir.1988) [vacated by August 1, 1988 order for rehearing en banc]. The district court was not free to depart from *R.A.G.S.* We must assume a sufficient pattern of racketeering activity was alleged.

### C.

■ The concept of continuity as a means of controlling the scope of RICO has also been incorporated into the enterprise element of section 1962. An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981), the Supreme Court stressed that continuity is a necessary attribute of an association-in-fact enterprise. We have incorporated this notion of continuity into our definition of such enterprises. An association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir. 1988); *Foval v. First Nat'l Bank of Commerce,* 841 F.2d 126, 129–30 (5th Cir.1988); *Montesano v. Seafirst Commercial Corp.,*

---

3. *See, e.g., Crocker v. FDIC,* 826 F.2d 347, 348 n. 2 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *Montesano v.*

*Seafirst Commercial Corp.,* 818 F.2d 423, 426 (5th Cir.1987). In our view, the criticism is warranted.

818 F.2d 423, 426–27 (5th Cir.1987); *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 440–41 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Shaffer v. Williams,* 794 F.2d 1030, 1032 (5th Cir.1986). Thus, the enterprise must not be one that briefly flourishes and fades. It must be one that, in the words of *Turkette,* "functions as a continuing unit." 452 U.S. at 583, 101 S.Ct. at 2528.

### III.

The district court properly dismissed Delta's second amended complaint. Delta has attempted to state a RICO claim by alleging multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction. This claim fails to state a RICO cause of action as a matter of law because the pleadings do not assert that the corporate defendants posed a continuous threat as RICO persons. Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor—the Case/Tenneco acquisition of IH and related efforts to combine the dealer network. Delta's claim that the method of termination of one or all dealerships fraudulently violated contractual rights or legal duties does not plead a RICO violation.

The judgment appealed from is

AFFIRMED.

REAVLEY, Circuit Judge, concurs in the result.