Jorge H. TREVIÑO, et al, Plaintiffs,

v.

Ruben D. PECHERO, M.D., et al, Defendants.

Civil No. M–08–219.

United States District Court, S.D. Texas, McAllen Division.

Dec. 9, 2008.

Orlando Jimenez, Hill & Jimenez, Pharr, TX, for Plaintiffs.

Joe A. Cisneros, The Cisneros Law Firm, Lynse Larance Guerra, Attorney at Law, Valorie Glass, Rex N. Leach, Atlas Hall LLP, McAllen, TX, Linda Sue McDonald, Langley Banack, San Antonio, TX, for Defendants.

Vicki Chrysler, Select Properties, Edinburg, TX, pro se.

### ORDER DENYING IN PART AND GRANTING IN PART MOTIONS TO DISMISS BY DEFENDANTS PECHERO, CHRYSLER, TREVIÑO AND MOBILE VIDEO TAPES, INC.

RANDY CRANE, District Judge.

### I. Background

The Plaintiffs, Dr. Jorge H. Treviño and Dr. James Stewart, bring suit against Ruben Pechero, M.D., real estate agent Vicki Lynn Chrysler, reporter Alex Treviño, and Mobile Video Tapes, Inc. (owner of News Channel 5) for committing and/or conspiring to commit violations of the Sherman Antitrust Act, Clayton Act, Hobbs Act, Racketeer Influenced and Corrupt Organizations Act, and various other state causes of action.

Now before the Court are Defendants' motions to dismiss the four federal claims (Docs. 5, 19, 25, and 39). For the reasons articulated below, Defendants Pechero's and Chrysler's motions are GRANTED as to the Sherman, Clayton and Hobbs claims and DENIED as to the RICO claim and the state causes of action. Defendants Treviño's and Mobile Video Tapes' motion are GRANTED as to all federal claims.

### II. Parties' Arguments

Plaintiffs allege that Defendant Pechero is the owner of the commercial office they rent for use as a medical clinic and Defendant Chrysler is Pechero's real estate agent. (Doc. 35 at 3).[1] Plaintiffs claim that Pechero, Chrysler, and Pechero's various business entities participated in a scheme to extort money from them. Plaintiffs allege that Pechero demanded that Plaintiff Treviño refer his orthopedic patients to him and demanded that Plaintiff Stewart persuade a Medicare plan provider to contract with Doctors Hospital at Renaissance, a hospital in which Pechero is a large shareholder. *Id.* at 6. Plaintiffs claim that when they did not do these things, Defendant Pechero attempted to keep patients from them and to extort money from them. *Id.* at 6–7. They allege that Defendants required them to pay for remodeling their offices using one of Pechero's construction companies and demanded double rent. *Id.* at 7. They claim that Chrysler eventually removed Plaintiffs' employees from the property and locked Plaintiffs out, prohibiting them from re-entering the property. *Id.* Plain-

---

**1.** Plaintiffs' original complaint, Doc. 1, was recently replaced by their amended complaint, Doc. 35.

tiffs say that Chrysler invited News Channel 5 to do a story on the property and allowed reporter Treviño and a film crew to trespass onto the property. *Id.* at 8. Defendant Treviño and Channel 5 then published a broadcast showing an "abandoned" medical office and accused Plaintiffs of illegal medical practices, including HIPAA violations and illegal dissemination of confidential information. *Id.* Plaintiffs say they are now being investigated by the Texas Medical Board and that their business and reputations are ruined. *Id.*

Plaintiffs file suit in this federal court, claiming federal question jurisdiction over the Sherman and Clayton Antitrust claims, the Hobbs Act claim, and the RICO claim, and thus supplemental jurisdiction over state law claims arising out of the same case or controversy. *Id.* at 2.

All Defendants file 12(b)(6) motions for failure to state a claim for which relief can be granted on the federal claims. (Docs. 5, 19, 25, and 39). Defendants claim that Plaintiffs fail to properly allege or support Sherman or Clayton Act violations. (Doc. 5 at 1 n. 1; Doc. 19 at 1 n. 2; Doc 25 at 1 n. 2). Defendants then argue that the purpose of RICO is not well served here, and that Plaintiffs fail to show a pattern of predicate acts under RICO, a RICO enterprise, or that Defendants are "persons" under the Fifth Circuit's interpretation of RICO's definition. (Doc. 5 at 5–8; Doc. 19 at 5–8; Doc. 25 at 5–8). Defendants also say that Plaintiffs fail to state a claim under the Hobbs Act because they show neither extortion nor robbery, nor any effect on interstate commerce. (Doc. 5 at 8–9; Doc. 19 at 9–10).[2] Finally, Defendants say that if all federal law claims are dis-missed, the Court should then dismiss state law claims as well. (Doc. 5 at 10; Doc. 19 at 11; Doc. 25 at 9). In briefing submitted at the request of the Court, Defendants Pechero and Chrysler also argue that the Hobbs Act is a strictly criminal statute which confers no private right of action. (Doc. 37 at 3–4; Doc. 38 at 1–2).

Plaintiffs respond that they have adequately pleaded each of the elements that Defendants say is lacking. (Doc. 17 at 2–4 and 8–10). They claim that Defendants confuse what must be pleaded with what must be proved, and note that federal courts employ liberal pleading standards and rarely grant motions to dismiss. *Id.* at 4. Their amended complaint more fully alleges the Sherman Act and Clayton Act claims and alleges another predicate act under RICO: attempted murder. (Doc. 35 at 5–7).[3]

### III. Standard of Review

Motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982)). In considering a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)). Nonetheless, to survive the motion, a plaintiff must plead "enough

---

**2.** Defendants Treviño and Mobile Video Tapes, Inc., argue that Plaintiffs made no Hobbs Act claim against them. (Doc. 25 at 1 n. 2).

**3.** Plaintiffs also seem to allege murder in addition to attempted murder. (Doc. 25 at 8). As Plaintiff Treviño's wife, who was allegedly the victim of an attempted shooting, is apparently still alive, the Court disregards the murder accusation.

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While a plaintiff's complaint need not contain "detailed factual allegations, [its] obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Id.* at 1964–65 (quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ..." *Id.* at 1965.

### IV. 12(b)(6) Motions versus 12(c) Motions

■ A 12(b)(6) motion must be filed before any responsive pleading. *Greninger*, 188 F.3d at 324. Defendant Pechero filed his Motion to Dismiss Plaintiffs' Alleged Federal Claims and Pendent State Claims (Doc. 5) before filing any responsive pleadings, so the Court recognizes his as a 12(b)(6) motion to dismiss for failure to state a claim.

■ In contrast, Defendant Chrysler filed her Motion to Dismiss Plaintiffs' Alleged Federal Claims and Pendent State Claims (Doc. 19) *after* she filed her Answer (Doc. 3), as did Defendants Treviño and Mobile Video Tapes, Inc. (Docs. 25 and 4). Thus these three Defendants' 12(b)(6) motions were untimely. However, the Court may construe a 12(b)(6) motion to dismiss as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Greninger*, 188 F.3d at 324.

■ This distinction is largely technical. "The standard of review under Rule 12(c) is the same as that under Rule 12(b)(6)." *In re Enron Corp. Securities, Derivative & "ERISA"*, 439 F.Supp.2d 692 (S.D.Tex. 2006) (citing *Great Plains v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313

n. 8 (5th Cir.2002)). For this reason, the Court will hereafter discuss the 12(b)(6) and construed 12(c) motions interchangeably.

### V. Analysis of Plaintiffs' Federal Claims

#### a. RICO Claims

■ RICO requires a showing that (1) a *person* that engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir.1995) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir.1988)) (emphasis in original). Because RICO is a federal statute, the racketeering must have at least a minimal nexus with interstate commerce. *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir.1985).

#### 1. Person

■ A "person" is defined broadly under the RICO statute as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3), *amended by* Pub.L. No. 110–234, 122 Stat. 923 (May 22, 2008). However, the Fifth Circuit narrows this broad definition by requiring also that a RICO "person" must also pose or have posed a continuous threat of engaging in racketeering activities. *Delta Truck & Tractor*, 855 F.2d at 242.

■ Here, Plaintiffs ignore the Fifth Circuit's more specific requirements for a RICO person and simply allege that Defendants are persons under the broader RICO definition. (Doc. 36 at 3). They do not specifically allege that Defendant Pechero poses a continuous threat of racketeering activity, but the Court infers from Plaintiffs' broad allegations of wrongdoing that Defendant Pechero could pose a

continuous threat to them. He presumably still owns the building in which their office is located, and thus could continue to exert great influence over them. Accordingly, the Court finds that Defendant Pechero is a person under RICO. Viewing the pleadings in light most favorable to the Plaintiffs, Defendant Chrysler, who was allegedly involved in multiple acts of wrongdoing at the direction of Pechero, could also pose a continuous threat to the Plaintiffs. Either of these Defendants could continue to engage in racketeering activity against Plaintiffs, if Plaintiffs' pleading are true.

However, Plaintiffs' allegations against Defendants Treviño and Mobile Video Tapes seem to be limited to the isolated incident of filming on the office property and the subsequent publishing of a news story. There is no indication that these parties could pose a continuous threat to the Plaintiffs and thus they are not persons under the Fifth Circuit's interpretation of RICO. RICO claims against these two parties fail at this first step in RICO analysis.

### 2. Pattern of Racketeering Activity

In order to plead a pattern of racketeering activity, a RICO claimant must show two components: (1) predicate acts, the requisite predicate activity, and (2) a pattern of such acts. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993). The RICO statute proscribes various categories of predicate acts that may constitute racketeering activity. 18 U.S.C. § 1961(1). The first category lists certain generically enumerated offenses that are "chargeable

under State law and punishable by imprisonment for more than one year" and which involve "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in matter, or dealing in a controlled substance or listed chemical," 18 U.S.C. § 1961(1)(A). A violation of the Hobbs Act is a predicate act as well. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir.2006).

Here, Plaintiffs allege that Defendants made numerous attempts to extort the Plaintiffs and allege violations of the Hobbs Act. (Doc. 35 at 3–4). The Court observes that the best-supported allegations of extortion are the alleged demand for inflated rent and the alleged requirement that the Plaintiffs consent to and pay for remodeling done by Defendant Pechero's construction companies. *See id.* Defendant Pechero argues that there was no extortion because extortion requires the perpetrator to "obtain property." (Doc. 37 at 5).[4] Indeed, RICO states that "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Obtaining money from the Plaintiffs for "phony construction" or for rent above their contracted amount by threatening them would fit this definition. While the Plaintiffs' various other attempts to allege extortion fit decidedly less neatly (if at all) into this definition, the construction and rent are two separate events and thus two occasions of attempted extortion and two predicate acts under RICO.[5] A "pattern of racketeering activi-

---

**4.** Many of Plaintiffs' allegations of "extortion" include actions that would not result in the transfer of any property at all, such as locking the Plaintiffs out of their property or defaming them. *See* (Doc. 36 at 3–4). Defendant Pechero is correct when he suggests that

these sorts of allegations do not fit within the RICO definition of extortion and do not support the Plaintiff's RICO claim.

**5.** The Court acknowledges Defendant Pechero's argument that Plaintiffs' allegation of at-

ty" requires at least two predicate acts. *Heller Fin. Inc. v. Grammco Computer Sales,* 71 F.3d 518, 523 (5th Cir.1996). Because at least two such acts are well pleaded, the Court finds Plaintiffs successfully pleaded a pattern of racketeering activity.

### 3. Enterprise

An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). The Fifth Circuit has interpreted this to mean "an ongoing organization, formal or informal" along with evidence of associates functioning as a "continuing unit." *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 440–441 (5th Cir.1987).

 Defendant Chrysler argues that individual RICO defendants cannot constitute the RICO enterprise and that an "association-in-fact" enterprise requires some sort of structure, but she cites only Seventh and Ninth Circuit cases for these propositions. (Doc. 38 at 3). In the Fifth Circuit, a plaintiff must distinguish between RICO persons and RICO enterprises. *Abraham v. Singh,* 480 F.3d 351, 357 (5th Cir.2007). The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages. *Whelan v. Winchester Production Co.,* 319 F.3d 225, 229 (5th Cir.2003). The Court is not aware of cases which indicate that the Fifth Circuit requires any sort of formal structure within an association-in-fact enterprise.

Here, the Plaintiff pleads that the Defendants, along with Pechero's various different corporate entities, form an enterprise. (Doc. 35 at 4). According to *Abraham,* RICO persons—such as Pechero and Chrysler—cannot be the RICO enterprise. 480 F.3d at 357. However, Plaintiff references many different entities controlled by Pechero. (Doc. 35 at 4). It is feasible that these companies constitute a RICO enterprise, and that they exist and are associated together separate from any pattern of racketeering activity as *Whelan* requires. 319 F.3d at 229. Therefore, the Court finds that the Plaintiffs successfully plead the existence of a RICO enterprise.

Because Plaintiffs plead all three elements of a RICO claim against Defendants Pechero and Chrysler, the RICO claim is *not* dismissed for failure to state a claim upon which relief can be granted.

### 4. Interstate Commerce

 The Fifth Circuit has held that "it cannot seriously be contended that ... [Medicare and Medicaid] do not affect commerce." *U.S. v. Ogba,* 526 F.3d 214, 238 (5th Cir.2008) (quoting *United States v. Hickman,* 331 F.3d 439, 443 (5th Cir. 2003); citing *Summit Health v. Pinhas,* 500 U.S. 322, 327, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991)). Plaintiffs plead a nexus with interstate commerce through their and their patients' participation in Medicare and Medicaid. (Doc. 35 at 10). Therefore, Plaintiffs adequately plead an effect on interstate commerce.

### b. Hobbs Act Claim

On its face, the Hobbs Act is a criminal statute which contains no reference to any

---

tempted murder is unfounded and conclusory. (Doc. 39 at 1–2). But since the Court finds that sufficient predicate acts were pleaded without the addition of the attempted mur-

der claim, it does not make any ruling here regarding the viability of this specific allegation.

private civil right of action. 18 U.S.C. § 1951. While the Fifth Circuit has not specifically spoken to this issue, many other courts, including a district court in this Circuit, have specifically held that the Hobbs Act creates no private right of action. *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402 (8th Cir.1999); *Hallock v. City of Rohnert Park,* No. 95–16836, 1996 WL 341362, at *1 (9th Cir. June 11, 1996) (not selected for publication) (affirming the district court's decision, which included a determination that Hobbs created no private right of action); *Decker v. Dunbar,* No. 5:06cv210, 2008 WL 4500650, at *43 (E.D.Tex. Sept. 29, 2008) (not selected for publication); *John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991); *American Computer Trust Leasing v. Jack Farrell Implement Co.,* 763 F.Supp. 1473, 1497 (D.Minn.1991); *Creech v. Federal Land Bank Of Wichita,* 647 F.Supp. 1097, 1099 (D.Colo.1986); *WSB Electric Co. v. Rank & File Committee to Stop 2–Gate System,* 103 F.R.D. 417, 419 (N.D.Cal.1984); *Campbell v. Austin Air Systems, Ltd.,* 423 F.Supp.2d 61, 72 (W.D.N.Y.2005); *Barge v. Apple Computer,* No. 95 Civ. 9715(KMV), 1997 WL 394935, at *2 (S.D.N.Y. July 15, 1997); *Bajorat v. Columbia–Breckenridge Development Corp.,* 944 F.Supp. 1371 (N.D.Ill.1996). "Since the Hobbs Act only provides for criminal sanctions, ... [this count] fails to state a civil claim for relief." *Peterson v. Philadelphia Stock Exchange,* 717 F.Supp. 332, 336 (E.D.Pa.1989).

■ Because the Hobbs Act cannot support an independent civil claim, the Hobbs Act Claim is dismissed for failure to state a claim under FED.R.CIV.P. 12(b)(6). Whether or not the Hobbs claim is suffi-ciently pleaded to form a predicate act that could bolster the RICO claim is not a question the Court must address here.

### c. Sherman and Clayton Antitrust Act Claims

■ Plaintiffs recite the elements of the Sherman Antitrust Act and the Clayton Antitrust Act, but they fail to actually allege any specific facts to indicate that the Defendants may have taken actions which could make them liable under these acts. (Doc. 35 at 5–6).[6] There appears to be no evidence or even allegations that Defendants attempted to restrain trade or to engage in a monopoly. Thus the Plaintiffs have failed to meet their "obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ..." *Twombly,* 127 S.Ct. 1955, 1964–65. Consequently, these two claims are dismissed for failure to state a claim under FED.R.CIV.P. 12(b)(6).

### VI. Conclusion

THEREFORE, for the foregoing reasons, it is ORDERED that Defendant Pechero's 12(b)(6) motions are DENIED in part and GRANTED in part; Defendant Chrysler's 12(c) motion is DENIED in part and GRANTED in part; and Defendants Treviño's and Mobile Video Tapes, Inc.'s 12(c) motion is GRANTED in part.

Plaintiffs' Sherman and Clayton Antitrust Acts claims are DISMISSED. Plaintiffs' Hobbs Act claim, as it attempts to state a stand-alone civil cause of action, is DISMISSED. However, Plaintiffs' RICO

---

**6.** While the amended complaint recites the elements of the Sherman and Clayton Acts in much more detail, it still fails to allege specific facts.

claim is *not* dismissed against Defendants Pechero or Chrysler. Because a federal cause of action remains, the Court retains the pendent jurisdiction over state-law claims as well.